# Supreme Court of Texas

No. 23-0281

In the Interest of J.O.L. and I.C.L., Children

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

JUSTICE LEHRMANN, concurring in the denial of the petition for review.

This Court recently confirmed that "when nonparents seek court-ordered custody of a child subject to an existing order, under which one or both fit parents were appointed managing conservators, that parent or parents retain the presumption that protects their fundamental right to determine their child's best interest." *In re C.J.C.*, 603 S.W.3d 804, 819 (Tex. 2020). In this modification proceeding, in which the trial court appointed the aunt and uncle of the children at issue as their managing conservators, Mother did not receive the benefit of the presumption to which she was entitled. Accordingly, I agree with the court of appeals that the case should be remanded for a new trial, and I agree with this Court's denial of Aunt and Uncle's petition for review. I write separately to express concern about some inconsistent and problematic language in the court of appeals' opinion and to

highlight some necessary considerations in evaluating the children's best interest on remand.

In September 2016, the trial court rendered an agreed order appointing Mother and Father joint managing conservators of their two children (who at that time were four and three years old, respectively) and giving Father authority to designate the children's primary residence. Father designated Aunt and Uncle's home as the children's primary residence, though there is evidence that the children had been residing there since 2013. Since the 2016 order, Aunt and Uncle have been the children's primary caretakers.

In October 2017, Mother moved to modify the order, seeking sole managing conservatorship and the right to designate the children's primary residence. Aunt and Uncle intervened and sought managing conservatorship. The trial court held that Mother was not entitled to a fit-parent presumption in a modification proceeding. After a jury trial, the trial court appointed Aunt and Uncle the children's joint managing conservators based on a jury finding that it was in the children's best interest to do so. Mother and Father were appointed possessory conservators. The court of appeals reversed and remanded for a new trial "that incorporates the fit-parent presumption into the children's best interest analysis." 668 S.W.3d 160, 170 (Tex. App.—San Antonio 2023). In light of *C.J.C.*, and given that Mother had been appointed a managing conservator in the order sought to be modified, I do not disagree with that result.

In *C.J.C.*, although we held that the fit-parent presumption applies in a modification proceeding, we did not address "the proper

evaluation of whether the fit-parent presumption has been overcome in a particular case." 603 S.W.3d at 821 (Lehrmann, J., concurring). While the Family Code provides no express standard for overcoming the presumption in Chapter 156, which governs modification proceedings, it does in other contexts. For example, a trial court may order reasonable possession of or access to a child by the child's grandparent if, among other requirements, the grandparent "overcomes the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being." TEX. FAM. CODE § 153.433(a)(2). Similarly, in an initial child-custody proceeding, a child's parents "shall" be appointed managing conservators of the child unless the appointment "would not be in the best interest of the child *because* [it] would significantly impair the child's physical health or emotional development." *Id.* § 153.131(a) (emphasis added). These provisions reflect the well-settled, and constitutionally mandated, policy of this state to accord significant deference to a fit parent's decisions about what is best for her child and to avoid interfering with those decisions absent a showing that they would result in physical or emotional harm to the child. *See In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007) (explaining that the State may not "infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better decision' could be made" (quoting *Troxel v. Granville*, 530 U.S. 57, 72–73 (2000) (plurality opinion))).

3

The court of appeals went a step further and concluded that Aunt and Uncle did not overcome the fit-parent presumption because no evidence was presented "to establish physical abuse, severe neglect, abandonment, drug or alcohol abuse, or immoral behavior" by Mother. 668 S.W.3d at 169. To the extent the court of appeals held that such evidence is *required* to rebut the presumption, as opposed to merely sufficient, I must disagree. By that reasoning, the parental presumption in a conservatorship proceeding cannot be rebutted absent proof of the same kind of egregious conduct that would justify terminating the parent–child relationship. *See* TEX. FAM. CODE § 161.001(b)(1) (enumerating grounds for termination, including abandonment, endangering the child's physical or emotional well-being, and use of controlled substances in a manner endangering the child's health or safety). Simply put, that cannot be right. Unlike orders adjudicating conservatorship or possession, a termination judgment "imposes permanent, irrevocable consequences." *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (discussing the significant differences between conservatorship and termination proceedings). For that reason, we have described parental-termination proceedings as "the 'death penalty' of civil cases." *In re D.T.*, 625 S.W.3d 62, 69 (Tex. 2021) (quoting *In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring)). A nonparent's use of the courts in a conservatorship proceeding to intrude on a presumptively fit parent's constitutionally protected determination of what is in her child's best interest is a serious matter carrying a heavy burden, but it is not on par with a termination proceeding.

4

Moreover, we recognized in *J.A.J.* that, unlike the termination statute with its detailed grounds, the conservatorship statute "imposes a more general standard that does not enumerate specific acts or omissions by the parent, but instead requires the court to find that appointing a parent [as conservator] would not be in the child's best interest because it would 'significantly impair the child's physical health or emotional well-being.'" 243 S.W.3d at 616 (quoting TEX. FAM. CODE § 153.131(a)). The court of appeals erroneously implied otherwise by relying on the absence of evidence of specific conduct amounting to "physical abuse, severe neglect, abandonment, drug or alcohol abuse, or immoral behavior." 668 S.W.3d at 169.

I am also troubled by the lack of clarity in the court of appeals' discussion of the impact on the significant-impairment analysis when a nonparent seeking conservatorship or possession of a child has played a parent-like role in the child's life. In discussing applicable law regarding the presumption, the court appeared to recognize that "significant impairment" may be "inferred from uprooting a child from a nonparental caretaker when the removal would be devastating . . . or cause serious psychological damage" so long as there is "some evidence explaining how the impairment would manifest as significant." *Id.* at 166 (quoting *In re N.H.*, 652 S.W.3d 488, 498 (Tex. App.—Houston [14th Dist.] 2022, pet. denied)). I unequivocally agree with that assessment. As I have stated before, "courts may afford the requisite deference to a fit parent's decisions concerning his child while still giving due consideration to the effect on the child's well-being of severing, or significantly curtailing, contact with a person who has served in a parent-like role to the child

5

over a significant period of time." *C.J.C.*, 603 S.W.3d at 823 (Lehrmann, J., concurring).

However, as discussed, in conducting its analysis and holding the parental presumption had not been overcome, the court of appeals appeared to rely solely on its conclusion that no evidence established "physical abuse, severe neglect, abandonment, drug or alcohol abuse, or immoral behavior." 668 S.W.3d at 169. This narrow—and, in my view, inaccurate—conception of what is necessary to establish significant impairment stands in stark contrast to the court of appeals' earlier discussion of the standard. On remand, evidence regarding the impact on the children of the loss or curtailment of contact with Aunt and Uncle will certainly be relevant to the evaluation of the children's best interest within the context of the fit-parent presumption.

With these additional thoughts, I concur in the denial of the petition for review.

Debra H. Lehrmann
Justice

**OPINION FILED:** November 22, 2024

6