# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-000622-CV

**E. T.- M., Appellant**

**v.**

**Texas Department of Family and Protective Services and M. L., Appellees**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 294,332-B, HONORABLE JACK WELDON JONES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant E.T.-M. (Mother) appeals the trial court's final order in this suit affecting the parent-child relationship. In one issue, Mother challenges that portion of the order granting M.L. (Father) the exclusive right to determine the primary residence of the couple's child. Finding no abuse of discretion, we will affirm the trial court's order.

## BACKGROUND

Mother and Father's child, M.A. L.-T. (or "M.A."), was born on September 30, 2009. When Mother and Father divorced in 2013, the trial court appointed Mother the sole managing conservator of M.A. and appointed Father the possessory conservator. In July 2017, the Texas Department of Family and Protective Services received a report of neglectful supervision arising from Mother's suicide attempt, made while M.A. and a child by a previous relationship were in her care. The Department filed an original petition for protection of the children and, if necessary, for

termination of Mother's parental rights. According to the affidavit of the Department investigator, which was attached to the Department's original petition, Mother admitted to the investigator that she had been home alone with her children, heavily intoxicated and depressed, when she attempted to overdose on ibuprofen. M.A.'s half-sibling called 9-1-1 when Mother became unresponsive. According to the investigator's affidavit, Mother had "attempted suicide three times in her past, all due to domestic violence by her significant others." The Department removed the children from Mother's custody, and the court designated the Department as temporary managing conservator. M.A. was placed in the care of Father, subject to monitoring by the Department, and Mother was granted supervised visits with M.A.

A final hearing began on January 17, 2018, and reconvened on March 7, 2018.[1] At the final hearing, the trial court heard testimony from the Department caseworker and from Father. Documents admitted as exhibits at the hearing included copies of the Department's "final permanency report to the court"; a report from an August 2017 psychological evaluation of Mother; negative results from a random drug test performed on Mother in January 2018; and a one-page "counseling note" signed by Mother's individual counselor on January 29, 2018, recommending M.A.'s return to Mother. At the close of the hearing, the Department, along with the attorney ad litem and guardian ad litem, recommended that the trial court modify the divorce decree to appoint Father and Mother as joint managing conservators and to designate Father as the conservator with the exclusive right to establish M.A.'s primary residence. The trial court subsequently signed a final

---

[1] Following the final hearing, Mother was appointed as sole managing conservator of M.A.'s half-sibling, whose father could not be located. No party has appealed this conservatorship decision. Therefore, we examine the trial court's rulings and evidence only as it relates to M.A.

order in accordance with the Department's recommendation on conservatorship and granted Mother access to the child under a standard possession order. This appeal followed.

## STANDARD OF REVIEW

We review a trial court's decisions regarding conservatorship, including a determination of which conservator will have the exclusive right to establish the child's primary residence, for an abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). A trial court abuses its discretion if it acts arbitrarily or unreasonably or without regard to guiding rules or principles. *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.).

In family law cases, the abuse-of-discretion standard overlaps with traditional sufficiency standards of review. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied); *see Miller v. Miller*, No. 03-14-00603-CV, 2015 WL 6830754, at *5 (Tex. App.—Austin Nov. 4, 2015, no pet.) (mem. op.). Consequently, in applying the standard, we engage in a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion and (2) whether the trial court erred in its application of that discretion.[2] *Zeifman*,

---

[2] The focus of the first inquiry is the sufficiency of the evidence. *Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied). Under the second inquiry, we must decide whether, based on the evidence before it, the trial court made a reasonable decision—that is, that its decision was neither arbitrary nor unreasonable. *Id.* To determine if the evidence is legally sufficient to support the trial court's exercise of discretion, we consider the evidence in the light most favorable to the trial court's findings if a reasonable factfinder could and disregard evidence to the contrary unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 897 (Tex. 2005). When reviewing the evidence for factual sufficiency, we consider and weigh all the evidence presented and will set aside the trial court's findings only if they are so contrary to the overwhelming weight of the evidence such that they are clearly wrong and unjust. *Id.* at 821. When the evidence conflicts, we must presume that the factfinder resolved any inconsistencies in favor of the order if a reasonable person could do so. *Id.* at 822.

212 S.W.3d at 587. "An abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision." *Echols*, 85 S.W.3d at 477.

## ANALYSIS

In one issue on appeal, Mother contends that the trial court abused its discretion in designating Father as the joint conservator with the right to establish M.A.'s primary residence because the evidence at the final hearing established that Father "is not currently in this country legally, and thus could be deported at anytime." Mother does not, however, point to specific evidence suggesting that she, in fact, would be the more suitable conservator to designate M.A.'s primary residence. Instead, Mother seems to argue that the evidence regarding Father's immigration status, standing alone, prohibits the trial court from designating Father as the conservator with the right to determine M.A.'s residence, regardless of the remaining evidence in the record.[3] This argument, however, fails to consider the trial court's wide discretion and the scope of our review.

When the trial court appoints joint managing conservators, it must designate the conservator who has the exclusive right to determine the primary residence of the child. Tex. Fam. Code § 153.134. In determining which joint conservator should have the exclusive right, the best interest of the child is the court's primary consideration, as it is in determining all "issues of

---

[3] Although not entirely clear, Mother's argument appears to be premised on the assumption that a deportation of M.A.'s Father would negatively impact M.A.'s well being. Although we do not necessarily disagree with this assumption, we cannot conclude that the mere possibility of deportation prevents the trial court from designating Father as the joint managing conservatorship with the right to determine the child's primary residence.

conservatorship and possession of and access to the child." *Id*. § 153.002. Trial courts generally have wide latitude in determining what is in a child's best interest, *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982), and may use a non-exhaustive list of factors to aid in the determination, *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the act or omissions of the parent. *Id*. These factors are not exhaustive, and no single factor is controlling. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 222 (Tex. App.—Austin 2013, no pet.). The factfinder is not required to consider all of the factors, and the presence of a single factor may, in some instances, be adequate to support a best-interest finding. *Spurck*, 396 S.W.3d at 222. With these factors in mind, we review the evidence in the record.

At the final hearing, the Department presented evidence, including the Department caseworker's testimony and the final permanency report, indicating that M.A. was doing well in Father's care, Father was able to provide a stable home for M.A. and meet his needs, and M.A. wished to remain living with Father. The Department caseworker testified that she did not have any concerns about Father's immigration status but on cross-examination acknowledged that she was

unsure of whether Father had been driving without a valid license. In his testimony, Father admitted that he was not in the country legally but denied that he could be deported at any time, explaining that he had filed immigration paperwork to obtain legal status. A copy of a "Petition for Alien Relative," purportedly filed by Father's wife with Department of Homeland Security and listing Father as a "beneficiary," was admitted into evidence. Father also testified that, although he did not currently have a driver's license, he would be able to obtain a license in the future; he was not currently driving with M.A. in the vehicle; and his wife was assisting in M.A.'s care and taking M.A. to medical appointments.

The trial court was presented with evidence that Mother was "making progress with her services, had completed a psychological evaluation, and was attending weekly individual counseling." According to the permanency report, "[Mother] [was] determined to do all necessary tasks to protect her children." The Department also presented evidence, however, that Mother has a history of alcohol abuse, for which she is currently receiving help, and that she suffers from various symptoms of depression.

The trial court is best able "to observe the demeanor and personalities of the witnesses and [to] 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record." *See Echols*, 85 S.W.3d at 477. We will not re-weigh the evidence bearing on the best-interest determination, *see City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005), and the fact that we might decide the issue differently than the trial court does not establish an abuse of discretion, *Zeifman*, 212 S.W.3d at 587. Having reviewed the evidence in this case under the appropriate standards, we conclude that there is "at least some evidence of substantive and probative

6

character" to support the trial court's conclusion that it is in M.A.'s best interest to give Father, as joint conservator with Mother, the right to determine the child's primary residence. *See Echols*, 85 S.W.3d at 477. That is, the trial court had sufficient information on which to exercise its discretion and did not err in the application of that discretion. *See id.* at 477-78. Accordingly, the trial court did not abuse its discretion by designating Father as the conservator with the exclusive right to determine M.A.'s primary residence.

We overrule Mother's sole issue on appeal.

## CONCLUSION

Having overruled appellant's issue on appeal, we affirm the judgment of the trial court.

_____

Chari L. Kelly, Justice

Before Chief Justice Rose, Justices Triana and Kelly

Affirmed

Filed: March 1, 2019

7