

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00342-CV

---

## IN THE INTEREST OF E.K.D., A CHILD

---

On Appeal from the 169th District Court
Bell County, Texas[1]
Trial Court No. 22DFAM335858, Honorable Cari L. Starritt-Burnett, Presiding

---

July 23, 2025

## MEMORANDUM OPINION

### Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant Kailyn Andrews appeals from a final order in a suit affecting the parent-child relationship regarding her child, E.K.D., with Appellee Nicholas Denbrock. Andrews raises three issues: (1) the trial court abused its discretion by requiring supervised visitation; (2) the evidence was insufficient to rebut the presumption favoring a standard possession order; and (3) the trial court abused its discretion in determining her net resources for child support were subject to the maximum amount. We affirm.

---

[1] This appeal was originally filed in the Third Court of Appeals and was transferred to this Court by a docket-equalization order of the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

## BACKGROUND

This case began with two registered foreign orders from Nevada that gave the parties "joint legal custody," a week-on/week-off possession schedule, and a mutual behavior order. Denbrock filed suit to modify the Nevada order in Texas, requesting that he have the exclusive right to designate the child's residence and to make all medical and educational decisions concerning the child. Andrews counterpetitioned for similar relief.

The matter was tried to the bench over four trial days across six months. The trial court appointed both parties as joint managing conservators but awarded Denbrock exclusive rights including the right to designate the child's residence. Andrews received only supervised visitation and was ordered to pay $1,500 monthly in child support.

## ANALYSIS

### Possession and Access

Andrews challenges the trial court's supervised visitation order in her first two issues. We review a trial court's modification of conservatorship or possession for an abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). "The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021) (quoting TEX. FAM. CODE ANN. § 153.002). Conservatorship suits are "intensely fact driven." *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002). For this reason, "the trial court is in the best position to 'observe the demeanor and personalities of the witnesses and can "feel" the forces, powers, and influences that cannot be discerned by merely reading the record.'" *In re J.J.R.S.*, 627 S.W.3d at 218 (quoting *Echols v. Olivarez*,

2

85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.)). The factfinder "is the sole judge of the credibility of witnesses and the weight to be given to their testimony." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

A trial court abuses its discretion by acting "without reference to any guiding rules or principles" or arbitrarily or unreasonably. *In re J.J.R.S.*, 627 S.W.3d at 218 (quoting *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)). A trial court also abuses its discretion "if it imposes restrictions that exceed those required to protect the child's best interest." *In re H.D.C.*, 474 S.W.3d 758, 764 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also In re J.J.R.S.*, 627 S.W.3d at 218–19.

Under this standard, challenges to the legal and factual sufficiency of the evidence are not independent grounds of error but instead are factors used to assess whether the trial court abused its discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). An appellate court considers (1) whether the trial court had sufficient information on which to exercise its discretion and (2) whether the trial court erred in its application of discretion. *Id.* at 588. A trial court does not abuse its discretion if there is some substantive, probative evidence to support its decision. *Id.* at 587.

Andrews argues that under the *Holley* and Family Code's best-interest factors, the trial court abused its discretion by requiring supervised visits. She also challenges the sufficiency of the evidence rebutting the presumption in favor of a standard possession order. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976);[2] TEX. FAM. CODE ANN.

---

[2] The *Holley* factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by the individuals seeking

3

§ 153.134(a).[3]  Andrews contends the trial court based its ruling on a "mere failure to follow a court order" rather than the child's best interest.

The trial court found Andrews violated court orders approximately two dozen times. Some violations were relatively minor, such as failing to provide her new address in a timely manner. Other violations were more significant, including going out of state, refusing to turn the child over during Denbrock's periods of possession, and making demeaning remarks about Denbrock during electronic communications with the child. The trial court also found that Andrews had refused to identify herself at a hearing and sent ex parte communications to the trial court through social media. Additionally, Andrews tried to remove the child from Denbrock's car without permission during what was supposed to be supervised visitation. Andrews does not challenge any of these findings, and the evidence supports them.

Additional evidence at trial included various filings by Andrews, including a "Writ of Divinia," and a notice that Andrews placed the child into a trust. Andrews testified she

---

custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

[3] The statutory best-interest factors include:

(1) whether the physical, psychological, or emotional needs and development of the child will benefit from the appointment of joint managing conservators; (2) the ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest; (3) whether each parent can encourage and accept a positive relationship between the child and the other parent; (4) whether both parents participated in child rearing before the filing of the suit; (5) the geographical proximity of the parents' residences; (6) if the child is 12 years of age or older, the child's preference, if any, regarding the person to have the exclusive right to designate the primary residence of the child; and (7) any other relevant factor.

TEX. FAM. CODE ANN. § 153.134(a).

4

agrees to follow court orders "when it's in the best interest of [the child]."  She indicated that she believed the original Nevada order violated due process and was illegal, which is why she did not believe she needed to follow it.

The *Holley* and statutory best-interest factors are neither exhaustive nor determinative.  *See* TEX. FAM. CODE ANN. § 153.134(a)(7) (permitting a trial court to consider any other relevant factors); *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002) (the *Holley* factors are not exhaustive and some cases may not have evidence of some factors at all).  Courts have considered a parent's conduct that interferes with the other parent's relationship with their child.  *See Allen v. Allen*, 475 S.W.3d 453, 458 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *In re Marriage of Chandler*, 914 S.W.2d 252, 255 (Tex. App.— Amarillo 1996, no writ).

The record contains significant testimony and evidence that Andrews interfered with Denbrock's relationship with the child.  The evidence reveals that Andrews:

- Sometimes refused to turn the child over during Denbrock's scheduled possession periods;

- Made negative comments about Denbrock to the child and called Denbrock and his family "demons," "psychos," and "evil monkeys";

- Exhibited suicidal ideation and paranoid beliefs about being followed and monitored;

- Engaged in "doctor shopping" by seeking treatment from multiple physicians until receiving preferred responses, often without consulting Denbrock;

- After temporary orders gave Denbrock medical decision-making authority, cancelled the child's four-year check-up and dental appointments; and

5

- Attempted to open Denbrock's car doors to obtain the child when no supervisor was present, which severely upset the child.

Although some of the *Holley* and statutory best-interest factors could have supported a different outcome, that does not mean that the trial court's order constitutes an abuse of discretion. The trial court considered Andrews's extensive history of interfering with Denbrock's relationship with the child, as well as his efforts to obtain proper healthcare for the child, and Andrews's position regarding following court orders that she deems not to be in the child's best interest. On this record, we cannot say that the trial court abused its discretion by limiting Andrews's periods of possession and access and requiring them to be supervised. Andrews's first and second issues are overruled.

Child Support

Andrews challenges the trial court's determination that her net monthly resources were $9,200—the statutory maximum—resulting in a $1,500 monthly support obligation.

Child support determinations are reviewed for an abuse of discretion, with legal and factual sufficiency serving as relevant factors rather than independent grounds for reversal. *Banakar v. Krause*, 674 S.W.3d 564, 573 (Tex. App.—Houston [1st Dist.] 2023, no pet.). Net resources include income from various sources, including trust income and "all other income actually received." TEX. FAM. CODE ANN. § 154.062(b). Trial courts may calculate net resources based on imprecise information, particularly when a party fails to provide required documentation. *In re N.T.,* 335 S.W.3d 660, 666 (Tex. App.—El Paso 2011, no pet.).

6

Andrews challenges the evidence supporting the trial court's finding that she made $20,000 in monthly income. Andrews testified that she receives income from her father's business that takes in $20,000 to $30,000 monthly, though she claimed her father pays her only $2,000 to $4,000 monthly "for the extra stuff." Notably, though, Andrews refused to provide trust documents, bank records, or other financial information despite discovery requests and a court order compelling production.

However, the trial court could also assess Andrews's credibility regarding her income through the other evidence of her expenses: she reported approximately $7,000 in monthly expenses for rent, car payments, and therapy alone—well beyond the $2,000 to $4,000 she claimed to receive. The trial court was free to disbelieve Andrews's testimony regarding her income. *See In re N.T.*, 335 S.W.3d at 666. Moreover, any error that the trial court could have made would be the fault of Andrews by contumaciously refusing to provide the necessary information to appropriately set child support, despite discovery requests and an order to compel. Accordingly, we conclude that there was at least some evidence of a probative and substantive character supporting the trial court's decision and determine that the trial court made a reasonable decision based on that evidence. *See Banakar*, 674 S.W.3d at 573. Andrews's third issue is overruled.

## CONCLUSION

We affirm the trial court's judgment.

Lawrence M. Doss
Justice

7